**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**Southern Division**

| | | |
|---|---|---|
| **RHODA BUCKNER,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | **Civil No. TMD 13-2363** |
| **v.** | * | |
| | * | |
| | * | |
| **CAROLYN W. COLVIN,** | * | |
| **Acting Commissioner of Social Security,** | * | |
| | * | |
| **Defendant.** | * | |
| | ************ | |

**MEMORANDUM OPINION GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT**

Rhoda Buckner ("Plaintiff") seeks judicial review under 42 U.S.C. § 405(g) of a final decision of the Commissioner of Social Security ("Defendant" or the "Commissioner") denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act. Before the Court are Plaintiff's Motion for Summary Judgment (ECF No. 18) and Defendant's Motion for Summary Judgment (ECF No. 21).[1]  Plaintiff contends that the administrative record does not contain substantial evidence to support the Commissioner's decision that she is not disabled.  No hearing is necessary.  L.R. 105.6.  For the reasons that follow, Defendant's Motion for Summary Judgment (ECF No. 21) is **GRANTED**, Plaintiff's Motion for Summary Judgment (ECF No. 18) is **DENIED**, and the Commissioner's decision is **AFFIRMED**.

---

[1] The Fourth Circuit has noted that, "in social security cases, we often use summary judgment as a procedural means to place the district court in position to fulfill its appellate function, not as a device to avoid nontriable issues under usual Federal Rule of Civil Procedure 56 standards." *Walls v. Barnhart*, 296 F.3d 287, 289 n.2 (4th Cir. 2002).  For example, "the denial of summary judgment accompanied by a remand to the Commissioner results in a judgment under sentence four of 42 U.S.C. § 405(g), which is immediately appealable."  *Id.*

# I

## Background

Plaintiff was born in 1966, has a high-school education, and previously worked as a nursing assistant.  R. at 28.  Plaintiff applied protectively for DIB on December 3, 2009, alleging disability beginning on February 1, 2009, due to arthritis, fibromyalgia, and high blood pressure.  R. at 102-03, 111, 115.  The Commissioner denied Plaintiff's application initially and again on reconsideration; consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  R. at 61-67, 70-73.  On February 8, 2012, ALJ G.B. Arthur held a hearing in Washington, D.C., at which Plaintiff and a vocational expert ("VE") testified.  R. at 24-60.  On April 24, 2012, the ALJ issued a decision finding Plaintiff not disabled from the alleged onset date of disability of February 1, 2009, through December 31, 2010, the date last insured.  R. at 10-23.  Plaintiff sought review of this decision by the Appeals Council, which denied Plaintiff's request for review on June 11, 2013.  R. at 1-4, 9.  The ALJ's decision thus became the final decision of the Commissioner.  *See* 20 C.F.R. § 404.981; *see also Sims v. Apfel*, 530 U.S. 103, 106-07, 120 S. Ct. 2080, 2083 (2000).

On August 13, 2013, Plaintiff filed a complaint in this Court seeking review of the Commissioner's decision.  Upon the parties' consent, this case was transferred to a United States Magistrate Judge for final disposition and entry of judgment.  The case subsequently was reassigned to the undersigned.  The parties have briefed the issues, and the matter is now fully submitted.

## II

## Summary of Evidence

### A.    Opinion Evidence

On June 14, 2010, Plaintiff underwent a consultative musculoskeletal examination by

Gerald Lee, M.D.  R. at 250-53.  Dr. Lee opined the following:

> [Plaintiff] is able to perform work-related activities such as walking, standing,
> sitting, hearing, speaking, handling objects with [her] left hand, and traveling.
> She would experience difficulties with prolonged walking, handling objects with
> [her] right hand, prolonged standing, heavy lifting, and carrying.

R. at 253.  Dr. Lee also opined that Plaintiff "would experience difficulties with fine manual

manipulations."  R. at 253.  Upon further examination of Plaintiff on April 18, 2011, Dr. Lee

found that Plaintiff

> is able to perform work-related activities such as walking, standing, sitting,
> handling objects, hearing, speaking, handling objects with [her] left hand, and
> traveling.  She may experience difficulties with prolonged walking, repetitive
> handling of objects with [her] right hand, prolonged standing, heavy lifting, and
> carrying.

R. at 277.  "She may experience difficulties with repetitive use of [her] right hand (her right

thumb mainly)."  R. at 277.

On July 9, 2010, a state agency consultant, J. Johnston, M.D., assessed Plaintiff's

physical residual functional capacity ("RFC").  R. at 258-65.  Dr. Johnston opined that Plaintiff

could (1) lift and/or carry 50 pounds occasionally and 25 pounds frequently; (2) stand and/or

walk for a total of about six hours in an eight-hour workday; (3) sit for about six hours in an

eight-hour workday; and (4) perform unlimited pushing and/or pulling.  R. at 259.  Plaintiff

frequently could balance, stoop, kneel, crouch, crawl, and climb ramps and stairs.  R. at 260.

She occasionally could climb ladders, ropes, and scaffolds.  R. at 260.  Plaintiff had no

manipulative, visual, communicative, or environmental limitations.  R. at 261-62.

On April 5, 2011, Michael Kaiser, Ph.D., a psychologist, conducted a mental status evaluation of Plaintiff. R. at 270-73. Testing revealed normal cognitive functioning. R. at 270. Plaintiff's thought processes were logical and focused, and she was able to perform simple math calculations, to explain simple, abstract relationships, and to remember recent events. R. at 270. She did demonstrate, however, visual motor impairment. R. at 270. Dr. Kaiser opined that Plaintiff had no problems in understanding and following simple instructions independently and in relating to co-workers and supervisors. R. at 273. Dr. Kaiser's diagnoses included depressive disorder not otherwise specified. R. at 271.

On April 22, 2011, Douglas Robbins, Ph.D., a state agency consultant, evaluated on a psychiatric review technique form Plaintiff's mental impairment under paragraph B of Listing 12.04 relating to affective disorders. R. at 279-92. Dr. Robbins opined that Plaintiff's depressive disorder not otherwise specified caused her to experience (1) no restriction in activities of daily living; (2) no difficulties in maintaining social functioning; (3) mild difficulties in maintaining concentration, persistence, or pace; and (4) no episodes of decompensation of extended duration. R. at 289. Dr. Robbins thus found that Plaintiff's mental impairment was not severe. R. at 279.

On May 16, 2011, S.K. Najar, M.D., another state agency consultant, again assessed Plaintiff's physical RFC. R. at 293-300. Dr. Najar opined that Plaintiff could (1) lift and/or carry 20 pounds occasionally and 10 pounds frequently; (2) stand and/or walk for a total of about six hours in an eight-hour workday; (3) sit for about six hours in an eight-hour workday; and (4) perform unlimited pushing and/or pulling. R. at 294. Plaintiff frequently could balance and occasionally could stoop, kneel, crouch, crawl, and climb ramps and stairs (but never ladders, ropes, or scaffolds). R. at 295. Frequent handling with her right hand was limited because of

pain.  R. at 296.  She had no visual, communicative, or environmental limitations, however.  R. at 296-97.

## B.     Plaintiff's Testimony

In his decision, the ALJ reviewed Plaintiff's allegations:

[Plaintiff] testified at the hearing, alleging that she suffers from severe joint pain, back pain, depression and anxiety symptoms, due to her fibromyalgia condition.  She explained that she has trouble getting around and that her arms and knees hurt, so that she has some problems lifting things, walking, standing, and performing household chores.  [Plaintiff] alleged that she has good days and bad days and that she has about 3 or 4 bad days per week.  [Plaintiff] noted that she has problems sleeping at night, due to pain, so that she sometimes naps during the day.  [Plaintiff] reported that she has sometimes has [sic] trouble getting along with others and gets anxious and depressed.  She explained that she needs to alternate sitting with standing and walking around.  [Plaintiff] testified that her "biggest problem involves sitting for long periods" and she says her prior job required her to sit between 4 to 5 hours during the day but admits on further inquiry she had to get up and down to get files.  She says she now experiences greater problems with using her hands for writing.

She alleges that she sleeps all day 2 days a week.  When asked she admits that the same is not medically documented to the extent described.  She says she did mention this fact to her primary care physician.  She asserts problems with sleeping but on inquiry says she does not take any medications to sleep and none is prescribed.  She says she has 3 to 4 bad days a week but the same is not medically documented.  She indicates she takes Tramadol for pain and experiences no side effects from any medications.  She indicates her urinary tract infections have resolved themselves.

By exhibits and testimony at the hearing [Plaintiff's] activities nevertheless included the following: preparation of light meals and did light cooking; some housecleaning and vacuuming albeit [Plaintiff] testified the same was done with some pain; did some reading; denied watching any TV at all and was sure of the same [which based on the other activities is found to be somewhat questionable]; shops; could walk 10 to 15 minutes without stopping [walks with son's girl friend for exercise]; goes out daily [but lately indicates only 3 to 4 times a week]; goes to church every Sunday; could {if money was available} pay bills; count change and handle a checking and savings account; pay attention if pain was under control; socialize with a close friend, and occasionally with family and friends; follow written and oral instructions good [sic] if pain was not too bad with medications helping with the pain; interacting with others without a problem; but having problems with changes in environment and stressful situations. . . . [Plaintiff] testified that her condition was worse prior to her date

last insured than following because she experienced improvement after her date
last insured.

R. at 19-20 (citations omitted); *see* R. at 28-52.

## C.   VE Testimony

The ALJ asked the VE whether jobs existed in the national economy for an individual
with Plaintiff's age, education, work experience, and RFC.  R. at 23, 54-58.  The VE testified
that, given all of these factors, the individual would have been able to perform the requirements
of unskilled, light occupations such as mail clerk, router, and preassembler.  R. at 23, 58.  The
VE also testified that available unskilled, sedentary jobs included order clerk, addresser, and
taper.  R. at 23, 58.[2]

## III

## Summary of ALJ's Decision

On April 24, 2012, the ALJ found that Plaintiff (1) had not engaged in substantial gainful
activity since the alleged onset date of disability of February 1, 2009; and (2) had an impairment
or a combination of impairments considered to be "severe" on the basis of the requirements in
the Code of Federal Regulations; but (3) did not have an impairment or a combination of
impairments meeting or equaling one of the impairments set forth in 20 C.F.R. pt. 404, subpt. P,
app. 1; and (4) was unable to perform her past relevant work; but (5) could perform other work
in the national economy.  R. at 15-23.  The ALJ accordingly found that she was not disabled
from February 1, 2009, through the date last insured of December 31, 2010.  R. at 23.

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying
of objects weighing up to 10 pounds."  20 C.F.R. § 404.1567(b).  "Even though the weight lifted
may be very little, a job is in this category when it requires a good deal of walking or standing, or
when it involves sitting most of the time with some pushing and pulling of arm or leg controls."
*Id.*  "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or
carrying articles like docket files, ledgers, and small tools."  *Id.* § 404.1567(a).

In so finding, the ALJ found that, through the date last insured, Plaintiff had the RFC

> to perform light [and alternatively sedentary] work as defined in 20 CFR
> 404.1567(b) except, [Plaintiff] could never climb ropes ladders or scaffolds and
> she could never kneel or crawl. [Plaintiff] should avoid exposure to dangerous
> heights and machinery, as well as exposure to extremes of temperature and
> humidity. [Plaintiff] could occasionally climb ramps and stairs and she could
> occasionally balance, stoop and crouch. [Plaintiff] should not lift and carry above
> the shoulder and she should not push or pull controls with her lower extremities.
> [Plaintiff] should avoid concentrated exposure to dusts and fumes, or exposure to
> vibrations; no constant repetitive right hand dominant use for gross manipulative
> handling but not precluding all right hand use and with full use of the left hand;
> [Plaintiff] should not have direct or immediate contact with the general public, but
> can interact occasionally with the public. [Plaintiff] needs a sit/stand option with
> no more than a half hour of sitting or standing at any one time. [Plaintiff]
> experiences occasional concentration interference from pain and fatigue, and as to
> being able to perform activities within a schedule, maintain regular attendance
> and be punctual within customary tolerances and complete a normal work day or
> work week without an unreasonable length and number of rest periods and as to
> accepting instructions and responding to criticism and get along with supervisors
> and peers with the ability to function productively at more than . . . 80%.

R. at 18 (thus in original). The ALJ considered Plaintiff's credibility and found that her

"medically determinable impairments could reasonably be expected to cause the alleged

symptoms; however, [her] statements concerning the intensity, persistence and limiting effects of

these symptoms are not credible to the extent they are inconsistent with the [ALJ's RFC]

assessment." R. at 20.

## IV

## __Disability Determinations and Burden of Proof__

The Social Security Act defines a disability as the inability to engage in any substantial

gainful activity by reason of any medically determinable physical or mental impairment that can

be expected to result in death or that has lasted or can be expected to last for a continuous period

of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R.

§§ 404.1505, 416.905. A claimant has a disability when the claimant is "not only unable to do

his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S. Ct. 376, 379-380 (2003). "If at any step a finding of disability or nondisability can be made, the [Commissioner] will not review the claim further." *Thomas*, 540 U.S. at 24, 124 S. Ct. at 379; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant has the burden of production and proof at steps one through four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 n.5 (1987); *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a "severe" impairment, i.e., an impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995); *see* 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a).[3]

---

[3] The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment.  If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience.   20 C.F.R.   §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford*, 734 F.3d at 293.

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work.   20 C.F.R.   §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4).   RFC is a measurement of the most a claimant can do despite his or her limitations.   *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).   The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources."   20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).   The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations.   *See id.*  If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled.   *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

---

appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting.  *Id.* §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Yuckert*, 482 U.S. at 141, 107 S. Ct. at 2291.

Fifth, if the claimant's RFC as determined in step four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at step four, age, education, and work experience. *See Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *See Walls*, 296 F.3d at 290; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find that the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

**V**

**<u>Substantial Evidence Standard</u>**

The Court reviews an ALJ's decision to determine whether the ALJ applied the correct legal standards and whether the factual findings are supported by substantial evidence. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). In other words, the issue before the Court "is not whether [Plaintiff] is disabled, but whether the ALJ's finding that [Plaintiff] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." *Id.* The Court's review is deferential, as "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Under this standard, substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion.

*See Hancock*, 667 F.3d at 472; *see also Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).

In evaluating the evidence in an appeal of a denial of benefits, the court does "not conduct a *de novo* review of the evidence," *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986), or undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Hancock*, 667 F.3d at 472. Rather, "[t]he duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court." *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996). When conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam).

# VI

## Discussion

Plaintiff contends that the ALJ erroneously assessed her RFC contrary to Social Security Ruling ("SSR") 96-8p.[4] Pl.'s Mem. Supp. Mot. Summ. J. 3-9, ECF No. 18-1 (citing, *inter alia*, *Fleming v. Barnhart*, 284 F. Supp. 2d 256, 271-72 (D. Md. 2003)). Plaintiff maintains that the ALJ failed to perform properly a function-by-function assessment of her ability to perform the physical and mental demands of work. *Id.* at 6.

Plaintiff's assertion is without merit. In this case, the ALJ discussed in narrative form the records and opinions of Plaintiff's examining and non-examining sources. R. at 20-22. The ALJ

---

[4] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding on all components of the Social Security Administration. *Heckler v. Edwards*, 465 U.S. 870, 873 n.3, 104 S. Ct. 1532, 1534 n.3 (1984); 20 C.F.R. § 402.35(b)(1). "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." *Pass*, 65 F.3d at 1204 n.3.

also considered Plaintiff's allegations and credibility when determining her RFC.  R. at 19-20, 21.  Thus, the ALJ's function-by-function assessment and narrative discussion were proper.  *See Brown v. Astrue*, Civil Action No. TMD 09-1358, 2011 WL 3047635, at *2 (D. Md. July 22, 2011); *Walter v. Astrue*, Civil No. JKS 08-639, 2009 WL 2584817, at *4 (D. Md. Aug. 19, 2009) (concluding that ALJ's "function by function" assessment was adequate because ALJ evaluated medical facts and opinions, as well as claimant's testimony and credibility, in narrative discussion).  Accordingly, remand is not warranted.

Plaintiff maintains, however, that the ALJ failed to explain his reasoning for concluding that Plaintiff experienced "occasional concentration interference from pain and fatigue" in her ability to perform work-related activities that nonetheless would render her able to perform productively at greater than 80% (R. at 18).  Pl.'s Mem. Supp. Mot. Summ. J. 6, ECF No. 18-1. She further maintains that the ALJ failed to explain the source of the physical restrictions in his RFC assessment.  *Id.* at 6-7.

> While the Commissioner's decision must contain a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons upon which it is based, there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision[.]

*Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014) (citation omitted) (internal quotation marks omitted).  Moreover, the burden is on the party attacking an agency's determination to show that prejudice resulted from the error.  *Shinseki v. Sanders*, 556 U.S. 396, 409-10, 129 S. Ct. 1696, 1705-06 (2009); *McLeod v. Astrue*, 640 F.3d 881, 887 (9th Cir. 2011) ("Where harmfulness of the error is not apparent from the circumstances, the party seeking reversal must explain how the error caused harm."); *Ngarurih v. Ashcroft*, 371 F.3d 182, 190 n.8 (4th Cir. 2004) ("[R]eversal is not required when the alleged error 'clearly had no bearing on the

procedure used or the substance of [the] decision reached.'" (quoting *Mass. Trs. of E. Gas & Fuel Assocs. v. United States*, 377 U.S. 235, 248, 84 S. Ct. 1236, 1245 (1964))).  Furthermore, "a deficiency in opinion-writing is not a sufficient reason for setting aside an administrative finding where the deficiency had no practical effect on the outcome of the case."  *Senne v. Apfel*, 198 F.3d 1065, 1067 (8th Cir. 1999); *see Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) (Posner, J.) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result.").  Rather, "[i]f it is predictable with great confidence that the agency will reinstate its decision on remand because the decision is overwhelmingly supported by the record though the agency's original opinion failed to marshal that support, then remanding is a waste of time."  *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010) (Posner, J.); *see Bishop v. Comm'r of Soc. Sec.*, 583 F. App'x 65, 67 (4th Cir. 2014) (per curiam).

Substantial evidence in this case supports the ALJ's finding that Plaintiff's memory and concentration difficulties could be reasonably expected to result from depression and anxiety, but they were not as limiting as she alleged because of an absence of disordered thought processes, cognitive dysfunction, and intellectual deficits.  R. at 17, 270.  Dr. Robbins, the state agency consultant, further opined that Plaintiff's depression was not severe because, among things, she experienced only mild difficulties in maintaining concentration, persistence, or pace.  R. at 279, 289.  Moreover, substantial evidence supports the ALJ's finding that Plaintiff's depression and anxiety "are well controlled when [she] is adhering to medical treatment.  The record shows long periods when [her] mental condition is stable" (R. at 21).  *See* R. at 324, 336 (noting normal affect and mood on January 27, 2011), 380 (noting "[n]o unusual anxiety or evidence of depression" on June 21, 2010), 386 (noting appropriate mood and affect on December 1, 2010),

389, 393, 395, 405, 407, 487, 489, 494 (noting appropriate mood and affect on various dates in 2011). "[A]n unexplained inconsistency between the claimant's characterization of the severity of her condition and the treatment she sought to alleviate that condition is highly probative of the claimant's credibility." *Mickles v. Shalala*, 29 F.3d 918, 930 (4th Cir. 1994) (Luttig, J., concurring); *see Hunter v. Sullivan*, 993 F.2d 31, 36 (4th Cir. 1992) (per curiam) (claimant's failure, *inter alia*, to sustain consistent treatment regimen supported ALJ's credibility determination that claimant's pain complaints were inconsistent with evidence); *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) (per curiam) ("If a symptom can be reasonably controlled by medication or treatment, it is not disabling."). Despite this evidence, the ALJ found that Plaintiff experienced moderate difficulties in concentration, persistence, or pace. R. at 17. Thus, as the Commissioner points out, the ALJ's RFC assessment of Plaintiff's mental limitations were more restrictive than any medical opinion in the record (Def.'s Mem. Supp. Mot. Summ. J. 9, ECF No. 21-1), and so Plaintiff does not demonstrate any prejudice from the ALJ's mental RFC assessment.

Plaintiff's contention regarding the ALJ's assessment of her physical RFC is similarly unavailing. She "provides no analysis of how a 'more detailed' assessment . . . might have resulted in a different outcome," *Seifert v. Comm'r, Soc. Sec. Admin.*, Civil No. SAG-11-1051, 2013 WL 1881065, at *2 (D. Md. May 2, 2013), and "has failed to point to *any* specific piece of evidence not considered by the Commissioner that might have changed the outcome of [her] disability claim." *Reid*, 769 F.3d at 865.

Plaintiff next contends that the ALJ failed to evaluate properly the evidence regarding her hand limitations. Pl.'s Mem. Supp. Mot. Summ. J. 7, ECF No. 18-1. The ALJ found that Plaintiff needed to avoid "constant repetitive right hand dominant use for gross manipulative

14

handling but not precluding all right hand use and with full use of the left hand." R. at 18.  She maintains that the ALJ placed no limitation on her abilities to use her left hand and to perform fine manipulation with either hand, despite Dr. Lee's findings in June 2010 that she was not able to make a fist with her right hand and had difficulty with fine manipulation in both hands (R. at 253).  Pl.'s Mem. Supp. Mot. Summ. J. 7, ECF No. 18-1.  Dr. Lee found, however, in June 2010 that Plaintiff could handle objects with her left hand, but she had difficulty doing so with her right hand.  R. at 253.  In April 2011, Dr. Lee again found that she could handle objects with her left hand, but found that she "may experience difficulties with repetitive use of [her] right hand (her right thumb mainly)."  R. at 277.  In any event, Plaintiff points to no evidence in the *Dictionary of Occupational Titles* that, with the exception of the job of taper, any of the jobs cited by the VE at the hearing require greater than a low to medium degree of finger or manual dexterity.  R. at 23, 58.  She further points to no evidence that any of the jobs cited by the VE demand more than frequent fingering.  Because "there is no indication that the ALJ would have reached a different conclusion regarding the availability of jobs in the national and regional economies," *Farnsworth v. Astrue*, 604 F. Supp. 2d 828, 837 (N.D.W. Va. 2009), Plaintiff's contention regarding the ALJ's consideration of her hand limitations is without merit.

Plaintiff further maintains that the ALJ failed to place any limitation upon her abilities to stand and to walk in his RFC assessment, despite Dr. Lee's opinion that Plaintiff would have difficulty with prolonged walking and standing (R. at 253, 277).  Pl.'s Mem. Supp. Mot. Summ. J. 7-8, ECF No. 18-1.  As the Commissioner points out, both state agency consultants opined that Plaintiff could stand and/or walk for a total of about six hours in an eight-hour workday (R. at 259, 294), which is a less restrictive assessment than the ALJ's RFC assessment for either sedentary work or light work with a sit-stand option (R. at 18).  *See* SSR 96-9p, 1996 WL

374185, at *6 ("The full range of sedentary work requires that an individual be able to stand and walk for a total of approximately 2 hours during an 8-hour workday. . . . If an individual is able to stand and walk for approximately 6 hours in an 8-hour workday (and meets the other requirements for light work), there may be a significant number of light jobs in the national economy that he or she can do even if there are not a significant number of sedentary jobs."). Because the ALJ cited the opinions of Drs. Lee and Najar in determining that Plaintiff's pain symptoms limited her to the light exertional level (R. at 22), Plaintiff's contention regarding the ALJ's assessment of her abilities to stand and to walk is unavailing. *See Smith*, 795 F.2d at 346 ("[T]he testimony of a non-examining physician can be relied upon when it is consistent with the record. Furthermore, if the medical expert testimony from examining or treating physicians goes both ways, a determination coming down on the side of the non-examining, non-treating physician should stand." (citation omitted)).

Plaintiff finally asserts that the ALJ erroneously evaluated her obesity. Pl.'s Mem. Supp. Mot. Summ. J. 8, ECF No. 18-1. She contends that the ALJ's determination at step two of the sequential evaluation process that her obesity was a severe impairment (R. at 15) contradicts the ALJ's finding that her obesity "has not had more than a minimal impact upon [her] ability to perform work activity" (R. at 16). The ALJ found, however, that

> [t]reatment notes reveal that despite obesity, [Plaintiff] was able to move about generally well and sustain consistent function and engage in a range of different activities. Objective examination has revealed that [Plaintiff] had good muscle tone, despite increased body mass. Additionally, there has been no showing that [Plaintiff] suffered from significant sleep apnea or heart disease. The medical evidence fails to indicate that [Plaintiff's] ability to manipulate has been negatively impacted by the presence of adipose (fatty) tissue.

R. at 15-16.

As noted in Part IV above, the Commissioner determines at step two of the five-step sequential evaluation process whether the claimant has a medically severe impairment or combination of impairments.   "[T]he step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citing *Yuckert*, 482 U.S. at 153-54, 107 S. Ct. at 2297-98); *see Felton-Miller v. Astrue*, 459 F. App'x 226, 230 (4th Cir. 2011) (per curiam) ("Step two of the sequential evaluation is a threshold question with a de minimis severity requirement.").   Accordingly, "[t]he findings that the [Commissioner] must make at steps two and four . . . are quite different." *Taylor v. Astrue*, Civil Action No. BPG-11-0032, 2012 WL 294532, at \*8 (D. Md. Jan. 31, 2012).   "At step four, on the other hand, the [Commissioner] must look to all the evidence on record and determine more precisely how, if at all, the claimant's impairments limit her ability to work." *Id.*   "It is possible, therefore, for [the Commissioner] to find at step two that a claimant's condition is severe— because the medical evidence does not conclusively prove otherwise—and yet at step four find no substantial evidence that the condition actually limits the claimant's ability to work." *Id.*; *see Walker v. Colvin*, No. C13-3021-MWB, 2014 WL 1348016, at \*7 (N.D. Iowa Apr. 3, 2014) ("A finding of a severe impairment at Step Two does not require the ALJ to provide related functional limitations at Step Four."); *Copes v. Comm'r, Soc. Sec. Admin.*, Civil No. SAG-11-3487, 2013 WL 1809231, at \*1 (D. Md. Apr. 26, 2013) ("[A]n ALJ is not required to include a corresponding limitation for each severe impairment.").   Accordingly, the ALJ did not err at steps two and four.

In sum, substantial evidence supports the decision of the ALJ, who applied the correct legal standards in this case.   Accordingly, Defendant's Motion for Summary Judgment is

**GRANTED**, Plaintiff's Motion for Summary Judgment is **DENIED**, and the Commissioner's decision is **AFFIRMED**.

## VII

### Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 21) is **GRANTED**.   Plaintiff's Motion for Summary Judgment (ECF No. 18) is **DENIED**.   The Commissioner's decision is **AFFIRMED**.   A separate order shall issue.

Date: January 28, 2015                                       _____/s/_____
                                                             Thomas M. DiGirolamo
                                                             United States Magistrate Judge